***********
Upon review of the competent evidence of record, with reference to the errors assigned, and considering the briefs and oral arguments of the parties, the Full Commission finds no good grounds to receive further evidence, or to rehear the parties or their representatives. Upon reconsideration of the evidence, the Full Commission affirms, with modifications, the Opinion and Award of the Deputy Commissioner, and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into at the hearing as:
 STIPULATIONS *Page 2 
1. The parties are properly before the North Carolina Industrial Commission, and the North Carolina Industrial Commission has jurisdiction over the parties and of the subject matter of these proceedings.
2. The parties are correctly designated, and there is no question as to the mis-joinder or the non-joinder of any party.
3. The date of the injury by accident is January 31, 2008.
4. On January 31, 2008, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act, and an employment relationship existed between the parties, with Broadspire acting as the third-party administrator for Defendant.
5. Defendant admits that on January 31, 2008, Plaintiff sustained an injury by accident arising out of and in the course and scope of his employment to his lower back.
6. After February 5, 2008, Plaintiff did not return to work.
7. Plaintiff's average weekly wage on January 31, 2008 was $919.80.
8. Defendant paid Plaintiff $30,126.27, representing 50 weeks of temporary total disability compensation, from February 5, 2008 through January 20, 2009.
9. The parties stipulated to the following documents being admitted into evidence as stipulated exhibits:
 a. Stipulated Exhibit One: Pre-Trial Agreement, North Carolina Industrial Commission forms and filings, and Plaintiff's Discovery Responses;
 b. Stipulated Exhibit Two: Plaintiff's Medical Records.
 *********** ISSUES
The issues to be determined are: *Page 3 
1. Whether Plaintiff unjustifiably refused suitable employment?
2. Whether Plaintiff's workers' compensation benefits should be suspended or terminated based upon his alleged unjustified refusal of suitable employment?
3. Whether Defendant is entitled to a credit for temporary total disability compensation paid to Plaintiff during his alleged unjustified refusal of suitable employment?
 ***********
Based upon the competent and credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 44 years old, with a date of birth of March 27, 1966. Plaintiff completed the eighth grade, and worked in the roofing industry for approximately 15 to 16 years prior to his employment with Defendant. In November 2007, Plaintiff began working as a service foreman for Defendant, which is a commercial roofing business with 60 locations throughout the United States.
2. On January 31, 2008, Plaintiff sustained a compensable work injury to his lower back while working for Defendant when his retractable harness ran out while he was attempting to stop a spool of cable from falling off of a roof. The harness pulled Plaintiff off of his feet and he landed on his lower back and tailbone on the metal roof. Defendant accepted the compensability of Plaintiff's January 31, 2008 work injury via a Form 60.
3. On February 7, 2008, Plaintiff presented to Dr. Daniel James Albright, an orthopaedist, for treatment of his January 31, 2008 work injury. On February 14, 2008, Dr. Albright performed a left-sided discectomy at the L5-S1 level of the spine. Plaintiff continued to treat with Dr. Albright post-operatively and underwent a course of physical therapy. *Page 4 
4. Dr. Albright initially released Plaintiff to return to work beginning May 14, 2008 with a 20-pound lifting restriction; however, Plaintiff was still experiencing leg pain and numbness, which required frequent changes of position for relief. The increasing pain also affected Plaintiff's ability to focus and concentrate. On May 12, 2008, Defendant offered Plaintiff a position as a warehouse assistant with a start date of May 14, 2008. The warehouse assistant position required frequent standing and occasional lifting of 20 pounds. On May 13, 2008, Dr. Albright revised Plaintiff's work restrictions to include no lifting greater than 10 pounds and no standing over one hour. The duties of the warehouse assistant position exceeded Plaintiff's revised work restrictions. Plaintiff did not accept the warehouse assistant position.
5. On May 19, 2008, Defendant offered Plaintiff a position as a telemarketer with a start date of May 21, 2008. The telemarketer position required Plaintiff to telephone potential customers on a list generated by Defendant. The skills required to fulfill the telemarketer position duties included the ability to communicate effectively, and the ability to speak and read English very well. The typical hourly rate for the telemarketer position was $10.00 to $15.00 per hour, but Defendant offered Plaintiff his higher pre-injury wage to return to this position. At the time that Defendant offered Plaintiff the telemarketer position, Defendant did not have any telemarketers working in North Carolina. Primarily, Defendant's telemarketers worked out of Dallas, Texas and Atlanta, Georgia. Since 2001, no telemarketers worked for Defendant in the Raleigh, North Carolina area. Plaintiff has no experience working in an office setting or performing customer service work.
6. Mr. Keith Andrew Battlefield, Defendant's mid-south regional manager, admitted that Defendant created the North Carolina telemarketer position to accommodate Plaintiff's work restrictions. According to Plaintiff, he did not feel that he possessed the required communication *Page 5 
skills to perform the telemarketer position, given his limited education and work experience. Plaintiff did not accept the telemarketer position.
7. Plaintiff continued to seek treatment from Dr. Albright for his complaints of lower back and left leg pain accompanied by numbness. On June 20, 2008, Dr. Albright referred Plaintiff for gentle work conditioning and a work test, and also recommended a pain clinic evaluation. However, Plaintiff never underwent the gentle work conditioning and work test recommended by Dr. Albright.
8. On July 14, 2008, Plaintiff presented to Dr. Robert Lacin, a neurosurgeon, with complaints of continued lower back and left leg pain with numbness in the left leg and foot. On August 26, 2008, Dr. Lacin administered a nerve root block. When the nerve root block provided no relief to Plaintiff, Dr. Lacin recommended that he follow up with Dr. Albright for consideration as a chronic pain patient.
9. On December 9, 2008, Plaintiff saw Dr. Zane Thomas Walsh, Jr., a pain management specialist. Plaintiff reported pain predominantly in his leg and foot. Plaintiff's nerve test results revealed acute and chronic irritation of the nerve root at the S1 level of the spine, which was consistent with his physical examination findings and magnetic resonance imaging (MRI). Dr. Walsh was of the opinion that Plaintiff developed epidural scarring and that he was unable to work at that time.
10. On January 27, 2009, Plaintiff saw Dr. Walsh again. Dr. Walsh noted that Plaintiff's complaints of pain were unimproved. Dr. Walsh increased Plaintiff's pain medication and kept him out of work through his next appointment on February 26, 2009. At Dr. Walsh's deposition on February 17, 2009, he opined that Plaintiff is unable to return to any type of work until his pain is better controlled. With better pain control, Dr. Walsh felt that Plaintiff might be *Page 6 
able to do sedentary to light-duty work. Dr. Walsh also opined that Plaintiff was not at maximum medical improvement.
11. On February 13, 2009, Dr. Albright was of the opinion that Plaintiff was at maximum medical improvement. He assigned Plaintiff a 15 percent permanent partial disability rating to the back, released him to return to work, and recommended job re-training. However, Dr. Albright also noted that Plaintiff's "results from surgery have been mixed, at best," and that "[s]ubstantial problems exist." At the time that Dr. Albright released Plaintiff to return to work, Dr. Walsh was still one of his authorized treating physicians.
12. On April 9, 2009, Plaintiff sought a second opinion with Dr. Thomas Craig Derian, an orthopaedist. Based upon Dr. Derian's physical examination of Plaintiff and a review of his June 10, 2008 MRI, he noted recurrent disc herniation at the L5-S1 level of the spine and recommended further surgery. Dr. Derian opined, and the Full Commission finds as fact, that Plaintiff's need for additional surgery was due to his January 31, 2008 work injury. Dr. Derian provided Plaintiff with sedentary work restrictions, which included no lifting greater than 10 pounds, frequent position changes from sitting to standing to walking, and avoiding activities which may aggravate his symptoms. At his deposition, Dr. Derian opined that Plaintiff is a "highly impaired person with a major neurological deficit and nerve retention signs, and he really can't do any job including light-duty type of work and telemarketing in a continuous, competitive, reasonable basis" because he is at risk for long-term nerve injury.
13. On May 18, 2009, Plaintiff underwent a MRI without contrast, based upon the recommendation of Dr. Derian. On June 5, 2009, Plaintiff returned to Dr. Albright. Based upon Plaintiff's presentation, Dr. Albright recommended another MRI with contrast. *Page 7 
14. On July 23, 2009, Plaintiff returned to Dr. Albright to review the results of the MRI with contrast. Dr. Albright noted an increase in the quality of nerve compression at the L5-Sl level of the spine, and recommended another left-sided decompression and fusion surgery at the L5-S1 level, which he causally related to Plaintiff's January 31, 2008 work injury. Based upon Plaintiff's need for further surgery, Dr. Albright was now of the opinion that he was not at maximum medical improvement with respect to his January 31, 2008 work injury. However, at Dr. Albright's second deposition following his July 23, 2009 office visit with Plaintiff, he continued to be of the opinion that Plaintiff could perform some sedentary work, despite his need for additional surgery.
15. The Full Commission gives greater weight to the opinion testimony of Dr. Walsh and Dr. Derian over any contrary opinions of Dr. Albright with respect to Plaintiff's ability to return to work. The Full Commission finds as fact that Plaintiff is not at maximum medical improvement, and that he was not at maximum medical improvement during the periods of time in which he received treatment from Dr. Walsh and Dr. Derian.
16. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff was not physically capable of performing the warehouse assistant position offered to him by Defendant in May 2008, and that his refusal to accept this position was justifiable. This warehouse assistant position exceeded Plaintiff's 10-pound lifting restriction and his restriction of standing no more than one hour. Moreover, when Defendant offered Plaintiff the warehouse assistant position, he was experiencing increased pain with numbness radiating into his left leg, and MRI scans subsequently confirmed these symptoms, revealing nerve compression at the L5-S1 level of the spine requiring additional surgery. *Page 8 
17. The Full Commission finds, based upon the greater weight of the evidence, that the telemarketer position offered to Plaintiff by Defendant in May 2008 was not suitable employment, given Plaintiff's limited education and prior work experience, which consisted of heavy labor with no telemarketing or clerical, office-based experience. The Full Commission further finds that the telemarketer position offered to Plaintiff by Defendant in May 2008 was make work, as Defendant specifically created this position to accommodate Plaintiff's work restrictions. Also, Plaintiff's nerve root problems, diagnosed by Dr. Walsh and Dr. Derian, caused pain control issues and major neurological deficits that precluded him from performing any type of work on a continuous, competitive basis. Therefore, the Full Commission finds that Plaintiff's refusal of the telemarketer position was justifiable.
18. The Full Commission finds as fact that Plaintiff proved that he was temporarily totally disabled from February 5, 2008 through the present and continuing. Dr. Albright took Plaintiff out of work until May 14, 2008. Plaintiff's permanent work restrictions prevented him from returning to his pre-injury position with Defendant. The only position that Defendant offered to Plaintiff within his work restrictions was unsuitable. On December 9, 2008, Dr. Walsh restricted Plaintiff from working through February 26, 2009. Based upon Plaintiff's June 10, 2008 MRI and his April 9, 2009 physical examination, Dr. Derian opined that Plaintiff had a recurrent disc herniation at the L5-S1 level of the spine and recommended further surgery. Dr. Albright later agreed with Dr. Derian's opinion that Plaintiff needs additional surgery. Currently, Plaintiff is awaiting surgery, which he is unable to undergo due to medical conditions unrelated to his January 31, 2008 work injury. To the extent that Plaintiff may be able to perform some sedentary work, the Full Commission finds as fact that Plaintiff continues to be "highly impaired" since his initial release to return to work on May 14, 2008, and incapable of *Page 9 
working in any employment on a continuous, competitive basis. Consequently, the Full Commission finds, based upon the greater weight of the evidence, that since May 14, 2008, it would have been futile for Plaintiff to seek suitable employment, considering his medical and physical limitations in combination with his pre-existing conditions, limited education, and prior work history consisting of heavy labor.
19. The medical treatment Plaintiff received was reasonably required to effect a cure, to give relief, and/or to lessen his period of disability with respect to his January 31, 2008 work injury. The Full Commission further finds that the future treatment recommended by Dr. Albright and Dr. Derian, including additional surgery, is reasonably necessary.
20. Based upon additional evidence presented during the expedited medical motion hearing process, the Full Commission finds that Plaintiff's surgery is now being delayed due to Plaintiff's low platelet count, which is unrelated to his January 31, 2008 work injury.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On January 31, 2008, Plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with Defendant to his lower back. N.C. Gen. Stat. § 97-2(6) (2009).
2. The burden is on Defendant to show that Plaintiff refused suitable employment. Gordon v. City of Durham,153 N.C. App. 782, 787, 571 S.E.2d 48, 51 (2002). *Page 10 
Once an employer makes this showing, the burden shifts to the employee to show that the refusal is justified. Moore v. ConcreteSupply Co.,149 N.C. App. 381, 389-390, 561 S.E.2d 315, 320 (2002). The tendered employment must accurately reflect the employee's ability to compete with others in the job market in order for the employment to be indicative of an employee's earning capacity. Peoples v. ConeMills, Corp., 316 N.C. 426, 342 S.E.2d 798 (1986). Thus, "if other employers would not hire the employee with the employee's limitations at a comparable wage level . . . [or] if the proffered employment is so modified because of the employee's limitations that it is not ordinarily available in the competitive job market[,]" the job is "make work" and is not competitive.Id.
3. In the case at bar, Defendant failed to prove that Plaintiff was physically capable of performing the warehouse assistant position offered to him in May 2008, and this position violated his work restrictions at that time. Therefore, Plaintiff's refusal to accept the warehouse assistant position offered to him by Defendant in May 2008 was justifiable. N.C. Gen. Stat. § 97-32 (2009).
4. Defendant also failed to prove that the telemarketer position offered to Plaintiff in May 2008 was suitable employment, given Plaintiff's limited education and prior work experience, which consisted of heavy labor with no telemarketing or clerical, office-based experience, and his nerve root problems which caused pain control issues and major neurological deficits that precluded him from performing any type of work on a continuous, competitive basis. Moreover, the telemarketer position offered to Plaintiff by Defendant in May 2008 was make work, as Defendant specifically created this position to accommodate Plaintiff's work restrictions. Therefore, Plaintiff's refusal of the telemarketer position was justifiable. N.C. Gen. Stat. § 97-32 (2009).
5. On January 31, 2008, Plaintiff became medically disabled from any employment, and Plaintiff remains medically disabled from any employment as a result of his work injury. *Page 11 
Further, it would be futile for Plaintiff to seek employment, despite his relatively young age, considering his limited education, physical limitations, prior work history consisting of heavy labor, and lack of transferrable job skills. Therefore, Plaintiff is entitled to continuing temporary total disability compensation in the amount $613.23 per week. N.C. Gen. Stat. § 97-29 (2009);Russell v. Lowes Prod. Distribution,108 N.C. App. 762, 425 S.E.2d 454 (1993).
6. The medical treatment Plaintiff received with respect to his January 31, 2008 work injury was reasonably necessary in order to effect a cure, to give relief, and/or to lessen his period of disability, and Defendants are obligated to pay for such treatment, and the future treatment recommended by Dr. Daniel James Albright and Dr. Thomas Craig Derian, including additional surgery, is also reasonably necessary. N.C. Gen. Stat. §§ 97-2(19),97-25, 97-25.1 (2009).
7. Dr. Derian is hereby designated as Plaintiff's authorized treating physician for the purpose of providing the future medical treatment Plaintiff requires for his January 31, 2008 work injury. N.C. Gen. Stat. § 97-25 (2009).
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, Defendant shall continue to pay temporary total disability compensation to Plaintiff at the rate of $613.23 per week.
2. Defendant shall pay all medical expenses incurred or to be incurred as a result of Plaintiff's January 31, 2008 work injury, including the future surgery and other treatment recommended by Dr. Thomas Craig Derian, for so long as such evaluations, examinations, and *Page 12 
treatments may reasonably be required to effect a cure, to give relief, and/or to lessen his period of disability, in accordance with the provisions of the North Carolina Workers' Compensation Act.
3. A reasonable attorney's fee of 25 percent of the compensation due Plaintiff under paragraph one is approved for Plaintiff's counsel. Defendant shall deduct and pay directly to Plaintiff's counsel every fourth compensation check.
4. Dr. Thomas Craig Derian is hereby designated as Plaintiff's authorized treating physician for the purpose of providing the future medical treatment Plaintiff requires for his January 31, 2008 work injury.
5. Defendants shall pay the costs of these proceedings.
This the __ day of September 2010.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/___________________ STACI T. MEYER COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1